Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)
Dylan Hughes (State Bar No. 209113)
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Tel.: (415) 981-4800
dcg@girardgibbs.com
je@girardgibbs.com
aep@girardgibbs.com
dsh@classlawgroup.com

Joseph G. Sauder (*pro hac vice* forthcoming)
Matthew D. Schelkopf (*pro hac vice* forthcoming)
**SAUDER SCHELKOPF LLC**
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Tel.: (610) 200-0580
jgs@sstriallawyers.com
mds@sstriallawyers.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| S.M., individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC FERTILITY CENTER and PRELUDE FERTILITY, INC,<br><br>　　　　Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>1.　Negligence and/or Gross Negligence;<br>2.　Breach of Contract;<br>3.　Bailment; and<br>4.　Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT
CASE NO.:

Plaintiff S.M. ("Plaintiff"), on behalf of herself and all other similarly situated individuals, files this action against Defendants Pacific Fertility Center ("Pacific Fertility") and Prelude Fertility, Inc. ("Prelude") (collectively, "Defendants") and alleges as follows.

## NATURE OF THE ACTION

1. This is a class action on behalf of individuals who contracted with Defendants to securely store their frozen eggs and embryos to preserve their future reproductive choices. Defendants breached that agreement and committed gross negligence by failing to keep the human tissue under its care frozen, resulting in its permanent loss.

2. Plaintiff entrusted Defendants with maintaining and preserving her frozen eggs indefinitely. But on March 11, 2018, Plaintiff received an email from Pacific Fertility providing notice of "a very unfortunate incident." The email stated that "earlier this week" the cryo-storage tank containing her frozen eggs "lost liquid nitrogen for a brief period of time," which may have resulted in the loss of the eggs. The email clarified that a "preliminary analysis" suggested only some of the human tissue in the affected tank was destroyed. Plaintiff called Pacific Fertility and learned from one of its doctors that, unfortunately, her eggs were destroyed and could never be used. Hundreds of other patients with eggs and embryos stored with Defendants received the same email as Plaintiff.

3. Plaintiff seeks appropriate relief on behalf of the other individuals whose eggs or embryos were destroyed in this incident.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (a) Plaintiff is a citizen of a state different from Prelude, (b) the amount in controversy exceeds $5,000,000, excluding interest and costs, (c) the proposed class consists of more than 100 individuals, and (d) none of the exceptions under the subsection applies to this action.

5. This Court has personal jurisdiction over Defendants. They conduct substantial business in this District and intentionally availed themselves of the laws and markets of this District. A significant portion of the acts and omissions complained of occurred in the District, and Plaintiff and many class members suffered harm in the District.

-1-

CLASS ACTION COMPLAINT
CASE NO.:

6. Venue is proper in this District under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### INTRADISTRICT ASSIGNMENT

7. Assignment to the San Francisco Division is proper under Local Rule 3-2(c) because a substantial part of the events or omissions giving rise to the claims occurred in San Francisco County.

### PARTIES

8. At all relevant times, Plaintiff was a citizen and resident of San Francisco County, California. Plaintiff is using her initials in this litigation to protect her privacy, and if required by the Court, will seek permission to proceed under this pseudonym.

9. At all relevant times, Defendant Prelude Fertility, Inc. was a Delaware corporation headquartered in Florida. Prelude was launched in October 2016 and runs a network of fertility clinics across the country.

10. Defendant Pacific Fertility Center is a private unincorporated entity located at 55 Francisco Street, Suite 500, San Francisco, California 94133.

11. At all relevant times, Prelude owned and operated Pacific Fertility Center.

### FACTUAL ALLEGATIONS

12. Defendants market and provide intrauterine insemination (IUI), in vitro fertilization (IVF), cryo-preservation of a woman's eggs and embryos, and genetic testing of embryos, among other fertility services.

A. **Prelude Fertility**

13. Prelude Fertility operates a nationwide network of fertility clinics offering IVF, genetic testing, and egg and embryo freezing, storage, and donation services. Prelude announced the addition of San Francisco-based Pacific Fertility to its network of fertility clinics on September 25, 2017.

14. Prelude emphasizes the safety of its egg storage services: "Eggs have been safely stored and then thawed after many years with the same success as eggs that are fresh or frozen for a short time. There is currently no evidence that suggests that frozen eggs deteriorate with time."[1] Prelude

---

[1] https://www.preludefertility.com/freeze-eggs.

-2-

CLASS ACTION COMPLAINT
CASE NO.:

1  advises its patients to "[s]et it and forget it until you're ready"—once a customer is ready to start a family, "frozen eggs are thawed and combined with sperm to create embryos."[2] According to Prelude, "[e]ggs can be safely stored as long as you need them."[3]

15. Prelude directs those who visit its website to Pacific Fertility for egg and embryo freezing services, specifying that its "services" are available in San Francisco.[4]

B. **Pacific Fertility Center**

16. Pacific Fertility offers its egg and embryo freezing services as a means of preserving "a precious resource, limited to just a few years of your life" and states that freezing reproductive tissue "can increase your chances of conception by 5 to 10 times."

17. The purpose of egg freezing is to allow people to preserve their own eggs so that they may be fertilized and implanted at a later time.

18. Eggs and embryos are preserved through a rapid freezing process called vitrification, which Pacific Fertility describes as a "technology that is used in the embryo and egg freezing process so that they can be stored for later use." The eggs are to remain frozen indefinitely, until the woman decides to fertilize them. Pacific Fertility represents that its customers' "[e]ggs remain frozen until you need them." It also touts the newer vitrification process as safer than earlier slow freezing technologies, which could lead to crystallization threatening the viability of frozen tissue. "Avoiding ice formation in this way," Pacific Fertility represents, "successfully protects the embryos from damage and allows them to be warmed later giving survival rates consistently above 90%."

19. Pacific Fertility's egg-freezing services are not cheap. One cycle of freezing and retrieval, including storage for a year, costs $8,345. A second cycle costs $6,995. Additional costs arise from other of Pacific Fertility's services, such as new patient consultations, lab work, and continuing tissue storage, as well as from needed medications. Pacific Fertility charges an annual fee of $600 for storing human reproductive tissue. Embryo freezing services similarly involve significant costs.

---

[2] https://preludefertility.com/freeze-eggs.
[3] https://www.preludefertility.com/faq.
[4] https://www.preludefertility.com/faq.

-3-

CLASS ACTION COMPLAINT
CASE NO.:

20. The value of the eggs and embryos that Plaintiff and other class members entrusted to Defendants—and for which Defendants accepted legal responsibility to store, preserve, and protect—is substantial. For some families, these fertility services provide their only opportunity to conceive a child.

21. Like Prelude, Pacific Fertility emphasizes its services are safe: "At Pacific Fertility Center, the egg recovery rate after vitrification and later thawing is 83 percent, and fertilization rate is 84 percent."[5] Regarding frozen embryo services, Pacific Fertility specifies: "there is no limit to how long cells remain viable in the frozen state. We have had some patients return to thaw embryos after more than 10 years and the embryos were no different tha[n] when they were frozen."[6]

C. **Plaintiff Purchases Egg Storage Services From Pacific Fertility Center**

22. Plaintiff first contacted Pacific Fertility about the possibility of having her eggs frozen in or around April 2014.

23. In or around August 2016, Plaintiff contracted with Defendants to have her eggs preserved for potential future use.

24. Plaintiff's insurance company paid for a portion of Defendants' services and of the necessary medications. She paid the remaining costs—totaling approximately $10,000—herself.

25. In October 2016, Plaintiff underwent procedures to prepare for egg freezing. Defendants then retrieved and froze her eggs.

26. At all relevant times thereafter, Plaintiff's eggs were under Defendants' protection, custody, and control. Defendants kept Plaintiff's eggs within a steel storage tank—Tank No. 4—at their San Francisco laboratory facility on Francisco Street.

27. Frozen eggs and embryos belonging to many hundreds of other people were stored in the same tank. Tank No. 4 housed up to 15 percent of Pacific Fertility's total frozen tissue, consisting of several thousand eggs and embryos.

---

[5] https://www.pacificfertilitycenter.com/fertility-preservation/my-eggs#success (last visited March 13, 2018).

[6] https://www.pacificfertilitycenter.com/treatment-care/sperm-and-embryo-freezing (last visited March 13, 2018).

-4-
CLASS ACTION COMPLAINT
CASE NO.:

**D. Defendants' Storage Tank Fails**

28. On or around March 4, 2018, Plaintiff's frozen eggs were irreplaceably damaged due to a loss of liquid nitrogen in the tank in which they were being stored.

29. The nitrogen in these tanks continuously evaporates at a slow rate, requiring it to be replenished on a daily basis.

30. On March 11, 2018, Pacific Fertility advised Plaintiff via email that her stored tissue "*may* have been impacted" when the equipment housing it lost liquid nitrogen (the "Incident"). The email further stated, "[w]e are incredibly sorry that this happened and for the anxiety that this will surely cause. We are heartbroken by this situation and our thoughts are with each of you who may have been touched by this event." Pacific Fertility also stated that it had "hired independent experts and launched an in-depth investigation of the matter." Several hundred other people received this email.

31. Plaintiff called Pacific Fertility. A doctor there informed her that her eggs were compromised.

32. Thousands of frozen eggs and embryos belonging to other people also were destroyed in the Incident.

33. "The Incident's root cause has not yet been definitively identified, but experts suspect a leak in the tank's seal.[7]

34. Whatever the cause, electronic tank monitoring sensors should have detected the rise in temperature and alerted staff to the problem earlier. As one storage facility operator noted, "It is standard to have a monitoring system that alarms locally when level or temperature are out of acceptable range and that calls out to staff following a 'call tree' structure."[8]

35. The American Society for Reproductive Medicine announced that it planned to review the Incident with other clinics and their equipment suppliers.

---

[7] https://www.mercurynews.com/2018/03/12/fertility-center-failures-would-oversight-help/ (last visited March 13, 2018).
[8] *Id*.

-5-

CLASS ACTION COMPLAINT
CASE NO.:

**CLASS ACTION ALLEGATIONS**

36. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a class defined as:

> All individuals whose eggs or embryos stored in Pacific Fertility Center's San Francisco laboratory were destroyed in March 2018.

37. Excluded from the class are Defendants, their affiliates and subsidiaries, and their officers, directors, partners, employees, and agents; class counsel, their immediate family members, and employees of their firms; counsel for Defendants, their immediate family members, and employees of their firms; and judicial officers assigned to this case and their staffs and immediate family members.

38. <u>Numerosity</u>. The members of the class are so numerous that their individual joinder is impracticable. There are at least 400 class members, whose names and addresses are readily available from Defendants' records.

39. <u>Existence and Predominance of Common Questions of Fact and Law</u>. This action involves common questions of law and fact that predominate over any questions affecting individual class members, including, without limitation:

    a. Whether the March 4, 2018, loss of liquid nitrogen at a tank in Defendants' San Francisco facility resulted from Defendants' negligence or other wrongful conduct;

    b. Whether Defendants failed to take adequate and reasonable measures to ensure that their systems were protected;

    c. Whether Defendants failed to take available steps to ensure that liquid nitrogen levels in their storage tanks would remain sufficient;

    d. Whether Defendants owed a duty to Plaintiff and class members to protect the eggs and embryos entrusted to Defendants' care;

    e. Whether Defendants breached their duties to protect the eggs and embryos that Plaintiff and class members entrusted to their care;

    f. Whether Defendants breached their contracts with Plaintiff and class members;

1      g. Whether Defendants' conduct violated the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; and

    h. Whether Plaintiff and class members suffered harm as a result of Defendants' violations and, if so, the appropriate measure of damages, restitution, or rescission.

  40. <u>Typicality</u>.  Plaintiff's claims are typical of the other class members' claims because Plaintiff and class members were subjected to the same wrongful conduct and damaged in the same way by having their human tissue destroyed.

  41. <u>Adequacy of Representation</u>.  Plaintiff is an adequate class representative.  Her interests do not conflict with the interests of the other class members she seeks to represent.  She has retained counsel competent and experienced in complex class action litigation, and she intends to prosecute this action vigorously.  Plaintiff and her counsel will fairly and adequately pursue and protect the interests of the class.

  42. <u>Superiority</u>.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by Plaintiff and the other class members are relatively small compared to the burden and expense that would be required to individually litigate these claims.  As a result, it would be impracticable for class members to seek redress individually.  Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Negligence and/or Gross Negligence

  43. Plaintiff incorporates the above allegations by reference.

  44. Defendants owed Plaintiff and class members a duty to exercise the highest degree of care when maintaining, inspecting, monitoring, and testing the liquid nitrogen storage tanks used for the preservation of eggs and embryos at Defendants' San Francisco laboratory.

-7-
CLASS ACTION COMPLAINT
CASE NO.:

45. Defendants breached these duties and acted with negligence and gross negligence in at least the following respects:

    a. failing to adequately maintain, inspect, monitor, and/or test their liquid nitrogen storage tanks, in accordance with industry standards, including through a functional electronic tank monitoring system capable of detecting a rise in temperature or a drop in liquid nitrogen levels and promptly alerting staff to the immediate problem;

    b. permitting a leakage to occur from one of their liquid nitrogen storage tanks containing human eggs and embryos;

    c. failing to properly safeguard the human reproductive tissue in its care; and

    d. failing to follow accepted scientific and laboratory procedures for safeguarding the human reproductive tissue in its care.

46. Defendants' acts and omissions constitute gross negligence because they constitute an extreme departure from what a reasonably careful person would do in the same situation to prevent foreseeable loss of human reproductive tissue.

47. Defendants acted willfully, wantonly, and with conscious and reckless disregard for the rights and interests of Plaintiff and class members. Defendants' acts and omissions had a great probability of causing significant harm and in fact did.

48. As a proximate result of Defendants' negligence and/or gross negligence, Plaintiff and class members suffered harm in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### Breach of Contract

49. Plaintiff incorporates the above allegations by reference.

50. Defendants entered into contracts with Plaintiff and each of the other Class members, under which Defendants agreed to collect, store, and preserve their eggs or embryos.

51. Defendants' form contract provided, in part, that "[e]ggs are stored in a tank of liquid nitrogen and maintained at low temperatures until utilized." More specifically, "[a]t a later date, when pregnancy using the cryopreserved eggs is desired, the eggs are thawed and the remaining steps in IVF are resumed."

-8-

52. In consideration of Defendants' promises, including to keep the eggs and embryos safe and secure, Plaintiff and class members agreed to pay, and did pay, substantial sums for the services rendered.

53. Plaintiff and class members performed all of the terms and conditions required of them under their contracts.

54. Based on the conduct described herein, Defendants breached their contracts with Plaintiff and class members.

55. As a direct and proximate result of Defendants' breach of contract, Plaintiff and class members suffered harm in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**Bailment**

56. Plaintiff incorporates the above allegations by reference.

57. Plaintiff and class members delivered to Defendants for safekeeping personal property to be safely and securely kept for the benefit of Plaintiff and class members, and to be redelivered to them upon demand.

58. Defendants received eggs and embryos from Plaintiff and class members on this condition.

59. Plaintiff and class members agreed to pay, and did pay, substantial sums in exchange for Defendants' promise to safeguard their eggs and embryos for the benefit of Plaintiff and class members.

60. Defendants had a duty to exercise care in maintaining, preserving, and protecting Plaintiff's and class members' eggs and embryos that were delivered to Defendants. Further, Defendants had a duty to return the eggs and embryos, undamaged, to the individuals to whom they belonged.

61. Defendants invited the general public, including Plaintiff and class members, to entrust eggs and embryos to Defendants' care by holding out Pacific Fertility as a competent, capable, and established reproductive and storage facility able to handle and care for eggs and embryos in a safe and satisfactory manner.

-9-
CLASS ACTION COMPLAINT
CASE NO.:

62. Because of Defendants' wrongful conduct, as set forth herein, the property of Plaintiff and class members was irreplaceably damaged, precluding its redelivery to them as provided for under the bailment contract.

63. Defendants breached their duty to exercise care in the safekeeping of Plaintiff's and class members' eggs and embryos delivered to Defendants and to return the eggs and embryos, undamaged, to Plaintiff and class members.

64. As a direct and proximate result of Defendants' breach of bailment contract, Plaintiff and class members have been deprived of the opportunity to use the eggs and embryos they entrusted to Defendants, and have suffered damages in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
**Violation of the Unfair Competition Law ("UCL"),
Cal. Bus. & Prof. Code § 17200 *et seq*.**

65. Plaintiff incorporates the above allegations by reference.

66. The UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

67. Defendants' conduct set forth herein is unlawful because it constitutes negligence, gross negligence, breach of contract, and bailment.

68. Defendants' conduct is unfair because it is immoral, unethical, unscrupulous, oppressive, and substantially injurious. The gravity of the harm resulting from Defendants' conduct detailed above far outweighs any conceivable utility of this conduct. There are reasonably available alternatives that would further Defendants' legitimate business interests, such as ensuring the continued protection of the human reproductive tissue in their custody and control.

69. Plaintiff and class members could not have reasonably avoided injury from Defendants' unfair conduct. Plaintiff and class members did not know, and had no reasonable means of learning, that Defendants were not ensuring the continued protection of the human reproductive tissue in their custody and control.

70. As a direct and proximate result of Defendants' unlawful and unfair conduct, Plaintiff and class members have suffered injuries in fact and seek appropriate relief under the UCL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the class defined above, respectfully requests that the Court:

    A.    Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as class representative, and appoint the undersigned counsel as class counsel;

    B.    Award Plaintiff and class members compensatory, restitutionary, rescissory, general, consequential, punitive and/or exemplary damages in an amount to be determined at trial;

    C.    Award pre-judgment interest as permitted by law;

    D.    Enter appropriate equitable relief;

    E.    Award reasonable attorneys' fees and costs, as provided for by law; and

    F.    Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 13, 2018                    Respectfully submitted,

                                    **GIRARD GIBBS LLP**

                                    By:  /s/ *Adam E. Polk*

Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)
Dylan Hughes (State Bar No. 209113)
601 California Street, Suite 1400
San Francisco, California 94108
Tel.: (415) 981-4800
dcg@girardgibbs.com
je@girardgibbs.com
aep@girardgibbs.com

Joseph G. Sauder (*pro hac vice* forthcoming)
Matthew D. Schelkopf (*pro hac vice* forthcoming)
**SAUDER SCHELKOPF LLC**
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Tel.: (610) 200-0580
jgs@sstriallawyers.com
mds@sstriallawyers.com
*Counsel for Plaintiff*

-11-

CLASS ACTION COMPLAINT
CASE NO.: